Allen, J.
after stating the case, proceeded:
The first question presented by these proceedings is whether the lien of the judgment, supposing nothing has occurred to affect its validity, would entitle the judgment creditor to charge the fund under the control of the court. The appellees the representatives of Trueheart, do not occupy the position of bona fide purchasers of the equitable estate of the debtor who have afterwards acquired the legal title. Their tes *619 tator and the creditors, whose debt Trueheart paid, were mere incumbrancers of the equity of redemption held by Wade Mosby when he executed the of trust of the 16th of September 1824. Allen the purchaser has acquired the legal title, and having discharged the previous incumbrances, the unpaid purchase money in his hands, represents and stands in the place of the equity of redemption remaining in Wade Mosby, and charged by his incumbrance of the 16th September 1824. The judgment was prior to that incumbrance, and was held as in Coutts v. Walker, 2 Leigh 268; Haleys v. Williams, 1 Leigh 140; and Buchanan v. Clarke, supra 164, although this equity of redemption could not be taken in execution at law, it was upon the general principles of a court of equity, bound in equity, as it would have been bound at law, if it had been a legal estate. And amongst incumbrancers, having nothing but equities, and none the legal title, their equities being equal, they are entitled to satisfaction according to the priorities of their incumbrances in point of time: and in equity the judgment is a lien on the whole of the debtor’s equitable estate, and the whole fund and not a moiety, must be applied to the satisfaction of the prior judgment before the subsequent incumbrance can be let in.
The judgment being a lien and charging the whole of the equitable estate, has any thing occurred to displace it ? It constituted a lien at the time of its rendition. The creditor then had the capacity to take out an elegit, and that right was never lost or even suspended through any act or omission of his own. Even if as was argued, there had been any necessity for a scire facias to revive the judgment the lien would have continued so long as the capacity to revive existed, and would have related to the date of the judgment. Taylor v. Spindle, 2 Gratt. 44. But there was no necessity to revive. The judgment was *620 rendered on the 18th of June 1819, and on the 24th June 1819 there was an execution and return. The was dissolved on the 20th of July 1826, and on the 28th of September 1826 another execution issued. Upon such dissolution the party was remitted to the lien of his original judgment. Whilst the creditor could get, or as in this case had, the capacity to issue an elegit, the lien of the judgment1 having once attached, continued to operate, notwithstanding any supervening suspension interposed by the injunction. Taylor v. Spindle, ubi supra.
It is furthermore insisted, that although the lien of the judgment did once attach and has not been lost, that lien did not extend to the damages on the dissolution of the injunction; that they formed no part of the judgment, and were only a consequence of the dissolution of the injunction; and that prior to that time all these conveyances and incumbrances were executed and recorded. It seems to me there can be no distinction in principle between damages upon affirmance in case of appeals and damages to be paid on the dissolution of an injunction. In respect to the first, the question has been settled by the case of McClung v. Beirne, 10 Leigh 394. The provision in regard to damages on the dissolution of an injunction is contained in 1 Rev. Code of 1819, p. 209, § 61, following almost in juxtaposition the 69th section of the same act concerning damages awarded on the affirmance of a decree. That section provides that upon an affirmance of a decree the court shall award damages, &c. The act in regard to writs of error and supersedeas to judgments at law, 1 Rev. Code, p. 240, § 61, provides that on an affirmance the damages shall be ten per centum, &c.; and the act in relation to injunctions provides that where the injunction shall be dissolved damages at the rate of ten per centum .shall be paid to the party. It will be seen that in *621 the case of appeals from decrees, the law provides the court shall award damages, &c.; on writs of error to judgments the damages shall be at the rate ten per centum, &c.; and on the dissolution of an injunction damages at the rate óf ten per centum shall be paid to the party, &c. In practice damages are always awarded in the decree or judgment of affirmance; in case of injunctions dissolved no entry is made awarding them; they are the legal consequence of the dissolution of the injunction unless the order dissolving directs otherwise. But the slight verbal variations in the sections referred to do not change or affect the principle; they were all in pari materia, and it is manifest the legislature intended to place the damages whether awarded on an affirmance of an appeal or to be paid on the dissolution of an injunction, on the same ground. The judgment of affirmance is to be certified to the court below; the order of dissolution to the clerk of the court wherein the judgment enjoined was rendered. In each case the clerk calculates the damages and the execution issues including them.
The argument that a purchaser who had purchased with' notice of a judgment and subject to it, would have no means of protecting himself against the act of his vendor who could enjoin the judgment against his consent, applies equally to the case of an appeal. The vendor could appeal without the consent of his vendee, and the damages on affirmance become part of the judgment, which in the language of Tucker president in McClung v. Beirne, opens to receive them.
Nor, as was contended, does the fact that upon obtaining the injunction the party must give bond affect the question. The party appealing if the judgment or decree is superseded, must do the same. The bond gives additional security for the judgment, but does *622 not vary its effect. When it opens to receive the damages they become, as it respects the party obtaining injunction, a component part thereof; and the execu^on of elegit must have directed a levy for all by extent of the lands whereof such party was seized at 1 J the date of the judgment or had subsequently acquired. I think therefore the damages constituted a lien on the equity of redemption in this case as much as the original judgment.
The lien of the judgment however can only embrace the penalty of the bond, the costs at law, and the damages. The judgment was for eight hundred pounds the penalty of the bond, and the costs, to be discharged by the payment of four hundred pounds, with interest at the rate of five per cent, from the 21st of October 1796, until paid and the costs. The debt and interest exceeded the penalty; and though a jury might have given interest by way of damages up to the time of finding the verdict, that has not been done, and the debt must be measured by the penalty. That has been paid under the interlocutory decree of June 23d, 1832. The lien of the judgment exists for five hundred and fifty-five pounds nine shillings and ten pence; the damages to be paid on the dissolution of the injunction, and the costs of the judgment at law, but not for any continuing interest.
It is argued however that whatever might have been the legal rights of the parties upon a proper case, yet in the condition of the cause as it stood when the interlocutory decree appealed from was pronounced, no other decree could have been rendered. That the incumbrancers on Curies were brought into court by strangers; that the creditor who alone could assert his right to charge this equity had not done so by the mode in which alone he could do it; and that the relief already given to the appellant’s intestate is more than he was entitled to claim under the pleadings.
*623 The hill in this case was filed by several purchasers from Wade Mosby the principal debtor and Little-berry H. Mosby his appearance bail. It assailed original judgment upon grounds not now necessary to examine. It, moreover, set forth the various incum brances created by said Mosby on his estate called Curies in Henrico, his conveyances of his lands in Powhatan, and the conveyances of Littleberry H. Mosby, and the facts in regard to the Curies land. It controverted the lien of the judgment; but insisted, that if it were a lien, there should be a ratable contribution by all the purchasers and incumbrancers after the judgment. This portion of the bill is nothing more than a bill convening all who are responsible to a common creditor, to ascertain whether any, and if so which, is primarily liable; or whether the burden should be apportioned amongst all. The creditor is not the party complaining here of being arrested by this proceeding, although he had the right to charge the whole of the estates of his debtors. That he looked to all for satisfaction appears from the fact of his suing out elegits directed to the sheriff of both Powhatan and Henrico counties. But although all were liable to the creditor at least for part of the judgment, as between themselves they occupied different relations. If the principal debtor Wade Mosby alone retarded the execution by the injunction, the appearance bail Littleberry H. Mosby, and the purchasers from him, might, under the authority of Garnett v. Jones, 4 Leigh 633, have contended that his estate was not liable for the damages. If the principal’s estate was sufficient to pay the judgment, they had a right to insist on its being so applied in exoneration of the bail and his vendees; especially as a portion of it had been sold and the fund not then appropriated. All the subsequent purchasers from Wade Mosby were made parties, but none have objected to *624 the jurisdiction: And the appellees, the representatives of Trueheart, who were made parties after the was brought into court, do not controvert the r3ght of the court to dispose of it; but set forth the §roun<^s 031 which they claim it. I think the case was one proper for the jurisdiction of a court of equity; and that as each party was asserting distinct grounds for a total or partial exemption from responsibility, all questions as to the validity and extent of the lien, and what fund was primarily liable, were submitted for decision. The creditor in regard to these matters occupied the position of a party who has filed a bill of interpleader. All and each being liable to him, it was upon the case made by the bill and pleadings, competent to decree between him and any codefendant what fund should be primarily applied to his satisfaction. The plaintiff supposing that the decision of Beverley v. Brooke, 2 Leigh 425, gave the rule of law, prayed for a ratable contribution; but the bill set forth all the facts and contained a prayer for general relief; and they should not be concluded by an erroneous impression of the law, when the facts showed they were entitled to a different relief. Still less should their mistake as to law conclude the creditor. In his answer he contends that the whole of the equity of redemption remaining in Wade Mosby was subject to his claim, and asked that it might be decreed to him. I think there is nothing in this objection, and that the case, as it stood when the interlocutory decree was pronounced, was in a condition to dispose of the fund in controversy according to the rights of the parties.
•It has been further argued, that Mary G-. Morrison, one of the plaintiffs suing by her next friend William W. Mosby, is precluded from shielding her own property by subjecting the equity of redemption in Curies to the lien of the judgment, to the prejudice *625 of the incumbrancer under the deed of trust, because she united with her husband in the deed to Allen of the 28th July 1828. In that deed it was recited the various parties secured by the said deeds of trust had agreed, that William W. Mosby, one of the trustees named in the last deed of trust on the Curies property, should make sale thereof and apply the proceeds of sale to the purposes of the said several deeds of trust in the order of their dates respectively. Without stopping to enquire into the effect of such a recital in reference to a claim not alluded to or probably in contemplation of the parties when executing that conveyance, or its bearing upon the rights of a feme covert uniting with her husband in the deed; it is sufficient to say it can have no influence on the rights of the appellant. His lien on the equitable estate represented by the fund in court is paramount to that of the creditor secured by the deed under which the representatives of Trueheart claimed, and could not be impaired by any agreement of the various incumbrancers by deeds of trust to distribute the proceeds arising from the sale of the property.
Upon the whole, it seems to me that the interlocutory decree of the 30th March 1846 was erroneous in holding that the representatives of William Trueheart were entitled to the fund in court in preference to the appellant; and without considering any other question in the case, the decree should be reversed with costs that the cause should be remanded with instructions-to enter a decree declaring that the appellant is entitled to subject the fund under the control of the court arising from the sale of the land called Curies-in the proceedings mentioned, to the satisfaction of the claim asserted by him, amounting to the sum of five hundred and fifty-five pounds nine shillings and; ten pence and the costs of the suit at law, and his costs in the Chancery court expended,* and that the *626 appellees the representatives of said William True-heart deceased, are entitled to the residue of said fund; and to call in and distribute the fund according to the principles aforesaid; and for further proceedings according to the rights of the parties, in order to a final decree.
The other judges concurred in the opinion of Allen, J.
Decree reversed.